TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00161-CV






Daniel Sierra, Margaret Chalker, Judy Starnes, and Janice Wright, Appellants



v.



James Nelson, State Commissioner of Education; and Lake Worth Independent


School District, Appellees







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT


NO. 98-13998, HONORABLE W. JEANNE MEURER, JUDGE PRESIDING







 This case involves a salary dispute between the Lake Worth Independent School
District (the District) and four teachers employed by the District--Daniel Sierra, Margaret
Chalker, Judy Starnes, and Janice Wright (the Teachers). Following a presentation by the
Teachers, the District's board of trustees (the School Board) denied the Teachers' grievance
regarding the dispute. The Teachers then appealed the decision to the Commissioner of Education
(the Commissioner), who found in favor of the District. The district court affirmed. The
Teachers seek a reversal of the district court judgment, claiming that (1) the substantial evidence
review conducted by the Commissioner denied the Teachers due process and violated their
constitutional right to open courts; (2) the Commissioner erred by failing to apply the rules of
evidence to his review of the record; and (3) the Commissioner's decision is not supported by
substantial evidence. We will affirm the Commissioner's decision and the district court's
judgment.


BACKGROUND

 The District may employ its teachers through written term,(1) probationary,(2) or
continuing(3) contracts. See Tex. Educ. Code Ann. § 21.002 (West 1996). If a teacher wishes to
resign after signing the contract, he or she must do so at least forty-five days before the school
year commences. See Tex. Educ. Code Ann. §§ 21.105(a), .160(a), .210(a) (West 1996). Once
this date passes, a teacher becomes bound by the contract and must remain with the District for
the upcoming school year. See id. §§ 21.105(c), .160(c), .210(c) (West 1996). Each year the
District sets the teachers' salaries when it adopts the budget for that school year.

 On August 11, 1995, the Teachers met with the District's superintendent Klaus
Driessen to discuss tenure longevity pay. During that meeting, the superintendent distributed a
document that included the proposed pay scale for the 1995-1996 school year and an estimated pay
scale for the 1996-1997 school year. The District had not yet adopted either of the proposed pay
scales at the time of the meeting. The District eventually adopted a salary schedule for the 1995-1996 school year on August 21, 1995.

 The Teachers began the 1996-1997 school year on August 12, 1996, although the
District did not adopt a budget for that year until August 26, 1996. The budget included salaries
that were less than what had been proposed during the August 11, 1995 meeting. In fact, the
District adopted the same salary schedule for the 1996-1997 school year that had been in place the
previous year. However, the District allowed qualified teachers to move up one step on the salary
schedule, thereby increasing their salary. Because the school year had already begun, the
Teachers did not have the option of resigning after the District adopted the salary schedule. See
id. §§ 21.105(a), .160(a), .210(a).

 Following the District's approval of the budget, the Teachers filed a grievance,
claiming they were entitled to the salary that had been proposed at the August 11, 1995 meeting
under the doctrines of equitable and promissory estoppel. After the grievance was denied by the
principal and the superintendent, the Teachers were given an opportunity to present their grievance
to the School Board. The Teachers' presentation consisted of argument by counsel and affidavits
prepared by the Teachers in support of their claim. In response, counsel for the District also
presented arguments to the School Board along with exhibits. Neither side offered sworn
testimony or formally offered any exhibits into evidence. The School Board denied the Teachers'
grievance. On appeal, the Commissioner conducted a substantial evidence review of the School
Board's decision and affirmed it. In his decision, the Commissioner stated that "when a grievance
is appealed to the Commissioner, the provisions of the Administrative Procedure Act(4) do not
apply; . . .[and] [b]oard members need not limit their consideration to evidence that meets the
standards of the Texas Rules of Civil Evidence." The Commissioner then concluded that no false
representation was made to the Teachers and no promise was made that would reasonably induce
action or forbearance, and so the elements of equitable and promissory estoppel were not satisfied. 
The Teachers sought judicial review of the Commissioner's decision in district court, and the
district court affirmed the Commissioner's decision. By three issues, the Teachers appeal the trial
court's judgment affirming the Commissioner's decision.


DISCUSSION

I. Due Process and Open Courts

 In their first point of error, the Teachers argue that the Commissioner's refusal to
apply the formal rules of evidence as modified by the Administrative Procedure Act(5) to his review
of the School Board's decision resulted in a denial of due process and the constitutional right to
open courts. According to the Teachers, although the School Board may consider whatever is
presented by the parties, the Commissioner's substantial evidence review should be limited to a
consideration of the evidence in the record that complies with some sort of recognized evidentiary
standard. In the alternative, the Teachers claim that any constitutional violations resulting from
the Commissioner's failure to apply the rules of evidence could be remedied if he were to conduct
a de novo review of the School Board's decision.

 Section 7.057(c) of the Texas Education Code unambiguously states that the
Commissioner shall employ a substantial evidence standard of review when considering an appeal
of a decision by a local school board. Tex. Educ. Code Ann. § 7.057(c) (West 1996). Under this
standard, the Commissioner examines the record to determine whether the school board's decision
resulted from a prejudicial error of law, such as an abuse of discretion, an action taken in excess
of authority, a violation of law, or fact findings that are unreasonable in light of the evidence
found in the record of proceedings before the school board. Ysleta Indep. Sch. Dist. v. Meno, 933
S.W.2d 748, 751 n.5 (Tex. App.--Austin 1996, writ denied). The Commissioner is restricted to
the record before him and may not re-weigh the evidence, find facts, or substitute his judgment
for that of the school board. Id. The record, at a minimum, must consist of an audible electronic
recording or written transcript of all oral testimony or argument. Tex. Educ. Code Ann.
§ 7.057(f) (West 1996). The Administrative Procedure Act governing review of agency decisions
does not apply when the Commissioner is reviewing the decision of a local school board. See
Gilder v. Meno, 926 S.W.2d 357, 360 (Tex. App.--Austin 1996, writ denied).

 The Teachers do not dispute that the Commissioner is statutorily required to
conduct a substantial evidence review of the School Board's decision. And they do not argue that
the local School Board should have conducted a trial-type hearing, subjecting the parties to the
rules of evidence. Indeed, we find it significant that the Teachers never objected during the
grievance proceeding to the School Board's failure to implement the rules of evidence or any trial-type hearing procedures. Rather, the Teachers argue that despite their failure to object, the
Commissioner should have limited his review of the record to only those statements and exhibits
that comply with the rules of evidence.

 The Texas Constitution guarantees the right to open courts as follows: "All courts
shall be open, and every person for an injury done him, in his lands, goods, person or reputation,
shall have remedy by due course of law." Tex. Const. art. I, § 13. This provision includes at
least three constitutional guarantees: "(1) courts must actually be operating and available; (2) the
Legislature cannot impede access to the courts through unreasonable financial barriers; and (3)
meaningful remedies must be afforded, 'so that the legislature may not abrogate the right to assert
a well-established common law cause of action unless the reason for its action outweighs the
litigants' constitutional right of redress.'" Trinity River Auth. v. URS Consultants, Inc., 889
S.W.2d 259, 261 (Tex. 1994) (quoting Texas Ass'n of Business v. Texas Air Control Bd., 852
S.W.2d 440, 448 (Tex. 1993)). The Teachers claim that they were denied this third guarantee.

 The relevant test for such a challenge is as follows:


[L]egislative action withdrawing common-law remedies for well established
common-law causes of action for injuries to one's "lands, goods, person or
reputation" is sustained only when it is reasonable in substituting other remedies,
or when it is reasonable exercise of the police power in the interest of the general
welfare.



Lebohm v. City of Galveston, 275 S.W.2d 951, 955 (Tex. 1955). A litigant assailing a statute as
a violation of the open courts guarantee must satisfy two criteria: the litigant must show (1) that
he has a cognizable common law cause of action that is being restricted; and (2) that the restriction
is unreasonable or arbitrary when balanced against the purpose and basis of the statute. See Trinity
River Auth., 889 S.W.2d at 262 (quoting Sax v. Votteler, 648 S.W.2d 661, 666 (Tex. 1983)). We
hold that under the circumstances of this case, the Teachers failed to satisfy the first part of this
inquiry.

 The Teachers asserted claims of equitable and promissory estoppel in support of
their grievance. To establish a claim of equitable estoppel, the Teachers had the burden of
proving: "(1) a false representation or concealment of material facts, (2) made with knowledge,
actual or constructive, of those facts, (3) with the intention that it should be acted on, (4) to a party
without knowledge, or the means of knowledge of those facts, (5) who detrimentally relied upon
the misrepresentation." Schroeder v. Texas Iron Works, Inc., 813 S.W.2d 483, 489 (Tex. 1991). 
Promissory estoppel is triggered if the promisor should reasonably expect that the promise made
will induce action or forbearance, the promise does in fact induce such action or forbearance, and
the enforcement of the promise is necessary to avoid injustice. El Paso Healthcare Sys., Ltd. v.
Piping Rock Corp., 939 S.W.2d 695, 698-99 (Tex. App.--El Paso 1997, writ denied). If a valid
contract exists between the parties covering the alleged promise, promissory estoppel is
inapplicable to the promise, and the party must seek damages under the contract. Id. at 699. 
Thus, in order to prevail on a promissory estoppel claim, a litigant must prove: (1) a promise;
(2) foreseeability that the promisee would rely on the promise; and (3) substantial reliance by the
promisee to his detriment. Id.

 The Commissioner found that the Teachers had failed to prove two of the elements
necessary for an equitable estoppel claim. Specifically, the Commissioner's decision states, "Since
no false representation was made and the Teachers could have easily checked out their
interpretation of what was said, the elements of equitable estoppel were not met in this cause." 
Similarly, the Commissioner made the following determination regarding the promissory estoppel
claim: "In this case, since no promise was made that would reasonably induce action or
forbearance, the elements of promissory estoppel were not met." The factual bases for the
Commissioner's conclusions were as follows: the document with the estimated salary schedule
for the 1996-1997 school year clearly labeled the figures as estimated; at the August 11, 1995
meeting, the superintendent told the Teachers that the figures were not certain but would be
presented to the School Board; the superintendent did not indicate that the figures were
guaranteed; it would not be reasonable to interpret the superintendent's statements regarding the
salary schedule to be anything but provisional; and the Teachers could have easily verified whether
the School Board had established a salary schedule for the 1996-1997 school year.

 Contrary to the Teachers' contentions, these findings reflect that the Commissioner
could have reached his conclusions without the "unsworn hearsay statements" allegedly offered by
the District's attorney.(6) Rather, the findings demonstrate that the Teachers failed to establish the
elements necessary to assert their claims of equitable and promissory estoppel--that is, the
Teachers failed to assert a cognizable cause of action. The Commissioner could reasonably have
reached this conclusion based solely on the argument and exhibits presented by the Teachers. 
First, the document distributed by the superintendent during the 1995 tenure meeting and allegedly
relied upon by the Teachers clearly includes the headings "Proposed 1995-96 Teacher Pay Scale"
and "Estimated 1996-97 Teacher Pay Scale." (Emphasis added.) These two phrases should have
alerted the Teachers that the proposed salaries had not yet been adopted by the School Board. And
because the document included the terms "proposed" and "estimated," the Commissioner could
have concluded from this document alone that no false representation was made to the Teachers
and that no promise was made that would reasonably induce action or forbearance. Absent a
cognizable cause of action, the Teachers are not entitled to a constitutionally protected open courts
guarantee. We reject the Teachers' open courts challenge.(7)

 The due course of law guarantee set forth in the Texas Constitution provides: "No
citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any
manner disenfranchised, except by the due course of the law of the land." Tex. Const. art. I,
§ 19.(8) Our review of a due process claim requires a two-part inquiry: (1) whether a liberty or
property interest is implicated, entitling the Teachers to due process protection; and (2) if so, what
process is due. University of Texas Med. Center v. Than, 901 S.W.2d 926, 929 (Tex. 1995)
(citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 428 (1982), and Board of Regents of State
Colleges v. Roth, 408 U.S. 564, 569-70 (1972)). "Absent life, liberty, or property interest, no
right to due process exists." Stratton v. Austin Indep. Sch. Dist., 8 S.W.3d 26, 29 (Tex.
App.--Austin 1999, no pet.). "Property rights are created and their dimensions defined by existing
rules or understandings stemming from independent sources such as state law." Id. (citing Roth,
408 U.S. at 577, and Paul v. Davis, 424 U.S. 693, 711-12 (1976)). A constitutionally protected
property interest exists if an individual has a legitimate claim of entitlement that is created,
supported, or secured by rules or mutually explicit understandings. Id.; see Davis, 424 U.S. at
711-12 (courts refer to state law in determining whether property interest exists); Bishop v. Wood,
426 U.S. 341, 344-46 (1976) (state law determines which interests constitute property); Spring
Branch Indep. Sch. Dist. v. Stamos, 695 S.W.2d 556, 561 (Tex. 1985) (property or liberty interest
must find its origin in some aspect of state law). We hold that in this case, the Teachers had no
protected property interest under state law, and therefore no right to due process exists.

 As stated above, the document distributed by Superintendent Driessen during the
tenure meeting clearly labeled the salary figures as "estimated," and the Teachers were aware that
the figures were subject to approval by the School Board. The estimated figures do not constitute
state law or a mutually explicit understanding and therefore do not create a constitutionally
protected property interest. At best, they create an expectation of a higher salary. We overrule
the Teachers' due process complaint.

 Because we hold that under these facts, the Teachers were not deprived of their
constitutional right to open courts and due process, we reject their suggestion that a de novo
review by the Commissioner would have protected these constitutional guarantees. We reiterate
our holding in Ysleta Independent School District in which we stated that a de novo review would
undermine the legislature's longstanding policy of encouraging local management and control of
public schools. See 933 S.W.2d at 752.


II. Administrative Procedure Act

 The Teachers next complain that the Commissioner erred in relying on unsworn
hearsay statements that did not comply with the rules of evidence or the Administrative Procedure
Act in reaching his decision and upholding the School Board's determination. We disagree with
this contention for several reasons.

 First, we note that the Teachers failed to raise this complaint in the form of an
objection during the grievance proceeding before the School Board. Thus, the Teachers waived
any complaints regarding the inclusion of hearsay statements in the record. See Banda v. Garcia,
955 S.W.2d 270, 272 (Tex. 1997) (opponent of testimony can waive complaint if he knows or
should know that objection is necessary). Once the statements were made a part of the record, the
Commissioner did not have the discretion to re-weigh the evidence, find facts, or substitute his
judgment for that of the School Board. See Ysleta Indep. Sch. Dist., 933 S.W.2d at 751 n.5. 

 Second, even if the Commissioner had excluded the exhibits and argument
presented by the District's attorney, he nevertheless had substantial evidence before him to affirm
the School Board's decision. The bases for the Teachers' estoppel claims were the document
reflecting the proposed salaries for the 1996-1997 school year and statements allegedly made by
the superintendent. Yet, the document clearly labeled the salary figures as "proposed," and the
Teachers confirmed that the superintendent never represented that the figures had been approved. 
Thus, based solely on the evidence submitted by the Teachers, without regard to the arguments
or exhibits advanced by the District, the Commissioner could have concluded that the Teachers
never established the elements necessary to support their estoppel claims.

 Finally, this Court has previously held that the Administrative Procedure Act does
not apply to the Commissioner's review of a local school board's determination. See Gilder, 926
S.W.2d at 360; see also Board of Trustees of the Big Spring Firemen's Relief & Retirement Fund
v. Firemen's Pension Comm'r, 808 S.W.2d 608, 611 (Tex. App.--Austin 1991, no writ) (because
the reviewing board did not have statewide jurisdiction, it was not an agency subject to former
Administrative Procedure and Texas Register Act). Often, local school boards do not have the
resources to conduct a full trial-type hearing and procure an administrative law judge for every
grievance presented to them. And to mandate the Commissioner to employ rules that were not
implemented by the school board would result in the Commissioner substituting his judgment for
that of the school board's and rendering its determinations meaningless. Nevertheless, we
emphasize that a local school board's decision will not be upheld if it resulted from a prejudicial
error of law, such as an abuse of discretion, an action taken in excess of authority, a violation of
law, or fact findings that are unreasonable in light of the evidence found in the record. Ysleta
Indep. Sch. Dist., 933 S.W.2d at 751 n.5. The Teachers' second issue is overruled.


III. Substantial Evidence

 In their final issue on appeal, the Teachers contend that the Commissioner's
decision is not supported by substantial evidence.

 Under a substantial evidence review, we determine whether the record as a whole
is such that reasonable minds could have reached the same conclusion as the Commissioner. 
Stratton, 8 S.W.3d at 30. We may not substitute our judgment for that of the Commissioner, and
we may only consider the record on which he based his decision. Id. The test is not whether the
Commissioner reached the correct conclusion, but whether some reasonable basis exists in the
record for the action taken by the School Board. Id. The findings, inferences, conclusions, and
decisions of the Commissioner are presumed to be supported by substantial evidence, and the
burden is on the Teachers to prove otherwise. Id.

 We need not restate the evidence on which the Commissioner based his conclusions. 
Our examination of the Teachers' other complaints reveals ample evidence in support of the
Commissioner's decision. We hold that there is a reasonable basis in the record for the
Commissioner's conclusion and overrule the Teachers' third issue.


CONCLUSION

 Having overruled all of the Teachers' issues, we affirm the district court's
judgment.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: October 26, 2000

Do Not Publish


1. See Tex. Educ. Code Ann. §§ 21.201-.213 (West 1996).
2. See id. §§ 21.101-.106 (West 1996 & Supp. 2000). 
3. See id. §§ 21.151-.160 (West 1996).
4. See Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2000).
5. See Tex. Gov't Code Ann. § 2001.081 (West 2000).
6. Among the exhibits offered by the District's attorney was a letter from the superintendent,
responding to the Teachers' grievance. Included in the letter is the assertion that other teachers
at the tenure meeting had conveyed to the superintendent that they understood the proposed salary
schedule to be a mere proposal and had placed no reliance on it. The Teachers argue that the letter
included unsworn hearsay testimony from both the superintendent and the other teachers
referenced in the letter, and therefore the Commissioner should not have been allowed to consider
the letter in his substantial evidence review. However, a review of the Commissioner's findings
of fact and conclusions of law reveals the Commissioner placed no reliance on this letter to reach
his determination. 
7. We note that section 7.057 of the Texas Education Code addresses the form of the record
that must be presented to the Commissioner for his review, but does not address the substance of
the local school boards' proceedings. See Tex. Educ. Code Ann. § 7.057(f) (West 1996). We
caution that in conducting these proceedings, school boards are charged with providing aggrieved
parties the procedural and legal safeguards to which they are entitled. See Gilder v. Meno, 926
S.W.2d 357, 363 (Tex. App.--Austin 1996, writ denied). And school boards should prepare a
record that provides the Commissioner sufficient information to conduct a substantial evidence
review. In this case, the Teachers failed to support their estoppel claims, and although the record
was minimal, it substantiated the Commissioner's decision. However, if this had been a case in
which the District were attempting to defeat the Teachers' claims and assert a defense based
entirely on unsworn hearsay statements, we may have reached a different conclusion.


 In addition, both the Commissioner of Education and the District cite to Friar v. Moses and
Austin Indep. Sch. Dist., No. 3-99-394-CV (Tex. App.--Austin May 11, 2000, no pet.) (not
designated for publication), in their briefs for the proposition that in conducting a substantial
evidence review, the Commissioner need not review the admissibility of the evidence forming the
basis of the school board's decision. Initially, we note that opinions not designated for publication
have no precedential value. Tex. R. App. P. 47.7. More importantly, however, Friar presented
a unique set of facts, and our holding was limited to a narrow factual context that included
elements of waiver.
8. The United States Constitution provides: "No State shall make or enforce any law which
shall abridge the privileges or immunities of citizens of the United States; nor shall any State
deprive any person of life, liberty, or property, without due process of law; . . . ." U.S. Const.
amend. XIV, § 1. Although the Texas Constitution includes the terms "due course of law" while
the federal Constitution employs the phrase "due process," we do not distinguish between the two
in reviewing a due process complaint under the Texas Constitution. University of Texas Med.
Center v. Than, 901 S.W.2d 926, 929 (Tex. 1995). Because the Teachers complain on appeal that
they have been denied "due process" under the Texas Constitution, we will refer to this
constitutional guarantee as "due process" in addressing their issue.


presumed to be supported by substantial evidence, and the
burden is on the Teachers to prove otherwise. Id.

 We need not restate the evidence on which the Commissioner based his conclusions. 
Our examination of the Teachers' other complaints reveals ample evidence in support of the
Commissioner's decision. We hold that there is a reasonable basis in the record for the
Commissioner's conclusion and overrule the Teachers' third issue.


CONCLUSION

 Having overruled all of the Teachers' issues, we affirm the district court's
judgment.



 

 Mack Kidd, Justice

Before Justices Jones, Kidd and Yeakel

Affirmed

Filed: October 26, 2000

Do Not Publish


1. See Tex. Educ. Code Ann. §§ 21.201-.213 (West 1996).
2. See id. §§ 21.101-.106 (West 1996 & Supp. 2000). 
3. See id. §§ 21.151-.160 (West 1996).
4. See Tex. Gov't Code Ann. §§ 2001.001-.902 (West 2000).
5. See Tex. Gov't Code Ann. § 2001.081 (West 2000).
6. Among the exhibits offered by the District's attorney was a letter from the superintendent,
responding to the Teachers' grievance. Included in the letter is the assertion that other teachers
at the tenure meeting had conveyed to the superintendent that they understood the proposed salary
schedule to be a mere proposal and had placed no reliance on it. The Teachers argue that the letter
included unsworn hearsay testimony from both the superintendent and the other teachers
referenced in the letter, and therefore the Commissioner should not have been allowed to consider
the letter in his substantial evidence review. However, a review of the Commissioner's findings
of fact and conclusions o